Hillsborough,
No. 4356.

JEANNETTE I. RICHARDS *v.* JOSEPH A. RIZZI.

Argued December 7, 1954.

Decided December 31, 1954.

*Leonard & Leonard* and *Francis W. Johnston* (*Mr. Richard W. Leonard* orally), for the plaintiff.

*Paul E. Nourie* and *Bartram C. Branch* (*Mr. Branch* orally), for the defendant.

BLANDIN, J.  The first question we shall consider is whether the Court erred in denying the defendant's motions for a nonsuit and directed verdict on the ground that there was no evidence of any damages.  Liability having been admitted, the plaintiff, who was pregnant at the time of the accident, testified that upon the collision, "I was thrown back against the steering wheel" and "felt a severe pain in my back, and I thought I was going to miscarriage my child . . . I was black from my kneecap right up through my hip . . . My arm was bruised some, and I had a bruise on my head . . . Immediately following the accident I had a severe backache."  She also testified that she worried a great deal about a possible miscarriage, that she had to remain in bed for a week and was unable to return to full-time work for some three years after her injury because when she tried to work her back pained her so she had to stop.  There was corroborative evidence from her employer as to her numerous complaints about her back aching and the date when she returned to a full-time job.  It is unnecessary to further detail the evidence on this score; it was ample to support a verdict.  The fact no medical testimony was offered is not fatal for the jury were entitled to believe her story as to her injury and ensuing suffering and incapacity and to draw "such inferences as are justified by the common experiences and observations of mankind."  *Dunham* v. *Stone*, 96 N. H. 138, 140.

There was also testimony that she had long been the mainstay of her employer on his chicken farm, having been employed by him for some ten years prior to the accident, that before her injury she tossed about bags of grain, handled heavy chicken crates, was a "very hard" worker and a "very good employee."  It was findable she was steadily employed at the time she was hurt, earning $35 to $40 a week and sometimes more.  Had she not been incapacitated, the jury could fairly infer from the evidence that she would have continued to earn approximately the same amount.  *Hill* v. *Company*, 96 N. H. 14, 17; *Dowling* v. *Shattuck*, 91 N. H. 234, 241, 242.  For four months after her injury she earned nothing,

and thereafter and until she returned to full-time employment three years after the accident, her earnings dropped sharply, averaging some $33 per month in 1950 and 1951, and $42 per month in 1952. True, there was conflicting evidence and the books which her employer produced to show payments for labor, including those to the plaintiff, were not such as would have aroused the enthusiastic approval of a certified public accountant. As he said, "I'm not a bookkeeper. I'm a farmer." However, he testified that she was "the major one that received all the salaries," regardless of the fact that he paid her husband some money. The jury had an opportunity to size up him and his books. The conflicts and the veracity of the witnesses were for them to resolve as it cannot be said that this is a case where the testimony was such as to be incredible or speculative as a matter of law. *Manseau* v. *Railroad*, 96 N. H. 7, 13, and cases cited. In short, on the entire record the jury could believe that before she was hurt this plaintiff was a robust and hardworking woman, who, as her counsel argued, was no "cream puff" to surrender to petty pains and idleness, and that she suffered a substantial and disabling injury as a result of the accident.

The allowance of leading questions was within the Court's discretion (*LePage* v. *Theberge*, 97 N. H. 375, 377, 378), and no abuse appears. It seems also the defendant takes nothing by his objections to the argument on the ground that the plaintiff's counsel was testifying. We believe in the circumstances that the jury understood from counsel's explanation of his remarks and from the Court's instructions, which the jury are presumed to have followed (*State* v. *Ellard*, 95 N. H. 217, 221), that the argument was intended merely to illustrate a point and was not to be taken as testimony. See *McLean* v. *Railroad*, 80 N. H. 252. The Court's implied finding that plaintiff's counsel committed no prejudicial error upon this score or in any other aspect, and that the trial was fair (*LePage* v. *Company*, 97 N. H. 46, 53) is sustainable. *Evans* v. *Foster*, 95 N. H. 194, 197. The amount of the verdict being within the bounds of reason and no further exceptions of merit appearing, the order is

*Judgment on the verdict.*

All concurred.