Clarence SHEPARD, Plaintiff, Appellant,

v.

GENERAL MOTORS CORPORATION,
Defendant, Appellee.

David SHEPARD, by his father and next
friend Clarence Shepard, Plaintiff,
Appellant,

v.

GENERAL MOTORS CORPORATION,
Defendant, Appellee.

Nos. 7426, 7427.

United States Court of Appeals,
First Circuit.

Heard Jan. 5, 1970.

Decided March 11, 1970.

James M. Winston, Manchester, N. H., with whom Peter J. Bourque, Manchester, N. H., was on brief, for appellants.

Matthias J. Reynolds, Manchester, N. H., with whom David Woodbury, Manchester, N. H., and Edmond J. Dilworth, Jr., Detroit, Mich., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

These are appeals by the plaintiffs from judgments entered below in negligence actions brought under the diversity statute. No. 7427 is a suit on behalf of a minor plaintiff, David Shepard, to recover damages for injuries and loss of earning capacity suffered as a result of an accident in which he was struck by an automobile manufactured by defendant. No. 7426 is a suit by the minor's father to recover medical expenses incurred as a result of the same accident. The gravamen of the complaint is that the negligent design of the automobile —in particular, a sharp radiator ornament—contributed to the injuries.

Trial was had below solely on the issues of damages and contributory negligence.[1] In No. 7427 the jury returned special verdicts awarding David $35,000 in general damages but nothing for loss of earning capacity. In No. 7426 it awarded the father damages of $2,314.45. The district court made adjustments for interest and the setoff of prior settlements, discussed below, and entered judgments for $18,125.34 in No. 7427 and for nothing in No. 7426. Since defendant does not appeal, the only issues before us pertain to damages. We deal first with the questions common to both appeals.

Prior to the trial below, plaintiffs commenced state court proceedings against one Yule, the operator of the car that struck David. Those cases were settled for payments of $21,500 and $2,500 to the son and father respectively.

Plaintiffs argue that the district court erred in allowing General Motors to set off the Yule settlements against the verdicts in this action. We conclude, however, that this issue is not properly before us.

Following a pre-trial conference the district court entered an order in which it ruled that "the amount of * * * [the Yule] settlement[s] will be deducted from any verdict obtained by the plaintiffs in these cases." Counsel were given ten days to file objections to the order and a longer period in which to submit memoranda on the issues of liability and damages. No objections to the order were filed and plaintiffs' memorandum on liability and damages does not refer to the propriety of the court's ruling. Furthermore, plaintiffs did not attempt to contest the court's ruling on this point at any later stage of the proceedings. The question is raised here for the first time and it has therefore not been properly preserved. Fowler v. Crown-Zellerbach Corporation, 163 F.2d 773 (9th Cir. 1947); see Fed.R. Civ.P. 16, 46; 5 J. Moore, Federal Prac-

1. The district court originally entered a default judgment against defendant on the issues of negligence and contributory negligence. Shepard v. General Motors Corp., 42 F.R.D. 425 (D.N.H.1967). We affirmed as to negligence but vacated the judgment as to contributory negligence and remanded for trial on that issue as well as damages. No. 7024 (1st Cir., filed March 5, 1968).

tice § 46.02, at 1903–06 (2d ed. 1969.)[2]

Next, plaintiffs contend that the trial court erred in computing the setoff by allowing a credit for interest on the amount of the settlement from the date of settlement. We do not agree.

The interest statute, N.H.R.S.A. ch. 524: 1–b (Supp., 1969), is designed to provide compensation for the loss of the use of money damages during the pendency of the lawsuit. *Cf.* Chagnon v. Union-Leader Corp., 104 N.H. 472, 190 A.2d 721 (1963). Where, as here, a part of the total damages is received by the plaintiffs in settlement of a claim against one of two joint tortfeasors before the case against the other proceeds to judgment, the plaintiffs have not been deprived of the use of the amount of the settlement after the date of that payment. To allow them to recover interest for the succeeding period from the second tortfeasor would be to allow compensation for a deprivation which did not in fact take place. Given the established state policy of allowing a setoff of a settlement with one joint tortfeasor against a verdict returned against the other,[3] we cannot construe the statute to prevent the setoff of interest here.

This brings us to points bearing primarily on No. 7427. At trial plaintiffs sought to introduce a duplicate of the hood ornament mounted on the Yule car at the time of the accident. In a conference in chambers the court excluded it[4] on the ground that its prejudicial effect would outweigh its probative value, but gave plaintiffs leave to reoffer it if they could lay a medical foundation which would increase its apparent value. During the cross-examination of defendant's medical expert, plaintiffs again sought to introduce the ornament following a statement by defendant's doctor that the nature of the object that caused the injury would have a bearing on the opinion formed by a physician attending a patient who had suffered a head wound. The court adhered to its original ruling, which the plaintiffs now assign as error.

It is well established that where the trial court finds the prejudicial effect of proffered evidence to exceed its probative value, the evidence must be excluded. Moreover, such a ruling will not be reversed unless it was an abuse of discretion. United States v. Cartano, 420 F.2d 362 (1st Cir., filed Jan. 12, 1970); *see* Prop.Fed.R.Evid. 4–03(a); J. Wigmore, Evidence §§ 1158, 1904 (3d ed. 1940). Here plaintiffs' expert had never seen the ornament during the course of his treatment and defendant's expert was at least skeptical of the value of the ornament in treating the patient. Moreover, plaintiff failed to make clear what bearing the nature of the ornament had, not on treatment, but on the assessment

---

2. Even if plaintiffs had properly preserved the point on appeal, it is unlikely that they would succeed. It is undisputed that New Hampshire law permits such a setoff where the successive defendants are joint tortfeasors. *E. g.,* Burke v. Burnham, 97 N.H. 203, 84 A.2d 918 (1951). The general rule is that where two independent, negligent acts combine to produce a single, indivisible injury, the actors are jointly and severally liable. *E. g.,* Laznovsky v. Furdanowicz, 22 Conn.Sup. 297, 170 A.2d 734 (1961); Leishman v. Brady, 9 W.W.Harr. 559, 3 A.2d 118 (Del.Super.1938); Feneff v. Boston & Maine R. R., 196 Mass. 575, 82 N.E. 705 (1907); Ristan v. Frantzen, 14 N.J. 455, 102 A.2d 614 (1954); Drown v. New England Tel. & Tel. Co., 80 Vt. 1, 66 A. 801 (1907); Restatement

(Second) Torts § 433A, comment i, at 440 (1965); *but cf.* Vidal v. Errol, 86 N.H. 1, 162 A.2d 232. Given the soundness of the position, in its avoidance of multiple compensation for the same injury, we have no strong reason to believe that the New Hampshire court would take a different view, hold that Yule and General Motors were not joint tortfeasors, and bar the setoff.

3. As noted above, plaintiffs are precluded from raising the district court's holding that Yule and General Motors were joint tortfeasors.

4. Plaintiffs' proffer of a complete auto hood, identical to that on the Yule car and complete with hood ornament, was likewise excluded. The same considerations apply to it.

of the amount of damage that had been done. On this record, we find no abuse of discretion and hold, accordingly, that the exclusion of the hood ornament was not erroneous.

 Finally, plaintiff contends that the trial court improperly charged the jury that it could not return a verdict for loss of earning capacity unless it found that David would have epilepsy.[5] This raises the difficult question of whether the charge must be read as plaintiffs suggest.

We think that there is support for reading the charge, standing alone, either as requiring a finding of epilepsy as a condition precedent to recovery for loss of earning capacity or as merely pointing out the possibility of epilepsy as an important factor in determining that recovery. However, upon careful scrutiny of the entire record we have come to the conclusion that the charge, taken in context, required a finding of epilepsy as a condition precedent and was probably so understood by the jury.

Of major significance in this connection is the court's action on the requests of the parties for instructions. Defendant's requested instruction number twelve read:

"If you find that it is more probable than otherwise that David will not have epilepsy, then you may not and shall not consider any claim of loss of future earnings or earning capacity."

Prior to argument the court informed counsel that it would charge in accordance with this request, and during his closing argument defense counsel repeatedly so informed the jury. Not only did the court fail to interfere with defense counsel's argument, but it overruled plaintiffs' objection to defense counsel's virtual restatement of the request.[6] These actions made clear to the jury the

5. The court charged as follows:
"Now, I am going to submit a second question to you, and that question reads as follows, and it is under a part of the verdict blank entitled special verdict:
"What amount of money, if any, do you find that the plaintiff David Shepard will probably lose in future earnings as a result of the injuries suffered in this accident?
"Now, in order for you to answer this question, you first of all have to determine whether or not it is probable that David will have epilepsy. And you have heard a considerable amount of testimony on that point, and both doctors were cross-examined, I will say, assiduously and fairly, and you heard argument on that score, also. So, first of all, in considering the question of future loss of earnings, you have to first determine whether or not David's injuries will, in fact, interfere with his ability to work at gainful occupations. If, in fact, you find his earning capacity will not be reduced at all, then you will award him nothing for that claim. If you find, however, on the balance of the probabilities, that it is more probable than not that the plaintiff's earning capacity —and I am talking now, when I say plaintiff, about David Shepard—will be reduced, you will then evaluate this reduction by considering the following

items, and again you are not restricted to these items, but you are restricted to the evidence: first of all you want to determine when the impairment to the plaintiff's earning capacity is probably going to occur. In this connection, I point out to you that the accident happened in August of 1963, and you may consider the fact that in the intervening period epilepsy has not developed. You should also consider the plaintiff's capacity to perform work related to his native intelligence and his intellectual ability. Now, if you find that David Shepard has a capacity to perform the type of work which will yield a better income than the minimum wage or a better income than he would make working in a shoe shop, you can evaluate this factor on the basis of all of the evidence."

6. The passages of defense counsel's closing argument that lead us to our conclusion are as follows:
"Let me say this: If you are going to believe any of these figures on the board, [pertaining to loss of earning capacity] * * * you have to believe that there is over fifty per cent chance that David has some sort of tumor that is growing and that he is going to have epilepsy. The Court is going to tell you that."
"Mr. Winston [plaintiff's counsel]: If it please the Court, I hate to inter-

court's own view. In this posture it ill behooves the defendant now to contend that the jury understood the opposite.

Defendant argues that even if the charge was too restrictive, we should affirm because there was insufficient evidence of loss of future earning capacity to go to the jury absent a finding of the probable onset of epilepsy. We cannot agree. Loss of earning capacity is normally a question of fact to be determined by the jury[7] in light of all the circumstances.[8] It is clear that where the evidence justifies an inference of loss based on "the common experiences and observations of mankind," the issue of damages for loss of earning capacity is for the jury. Richards v. Rizzi, *supra* n. 8. Here there was some evidence on which the jury might have based a verdict had the court's charge given them sufficient latitude. There was testimony that David had a horseshoe-shaped scar, suffered from headaches, and had an opening in the bone structure of the skull covered only by muscle tissue. We think the effect of these factors on earning capacity should not have been foreclosed from consideration by the jury. Accordingly, plaintiff is entitled to a new trial on this issue alone.

This leaves only the question of what role evidence of the possibility of epilepsy should play in the new trial. The jury's special verdict below indicates that they found it to be more probable than not that David would not have epi-

lepsy in the future. We see no reason to disturb that finding. Accordingly, the plaintiff may not introduce evidence bearing on the possibility of David being afflicted with epilepsy at the new trial.

The judgment in No. 7426 is affirmed. The judgment in No. 7427 is affirmed, except insofar as it denies a recovery for loss of earning capacity, on which issue it is reversed and remanded for proceedings consistent with this opinion.

rupt my brother, but that is not the law.

"*The Court*: Objection is overruled."

"The Court is going to instruct you that if you find, based on probabilities and the testimony that David is not going to have epilepsy, then you will not consider any claim for loss of earning capacity."

Finally,

"Now you heard Dr. Wright [defense witness] talking about probabilities and percentages. Dr. Wright said that, in his opinion, and from his studies and the other studies, David's chances of having epilepsy are about two per cent. Now probability, bear in mind, is more

than fifty per cent. And he gave you the reasons for it. All right. You must have to find that he is going to have epilepsy before you can make any sense out of all these enormous numbers on the blackboard."

7. Pierce v. Mowry, 105 N.H. 428, 201 A.2d 901 (1964); Capriotti v. Beck, 264 Minn. 39, 117 N.W.2d 563 (1962) (very similar to instant case); *see* Gray v. Dieckmann, 109 F.2d 382 (1st Cir. 1940) (New Hampshire law).

8. *Capriotti, supra* n. 5; *see* Richards v. Rizzi, 99 N.H. 327, 110 A.2d 275 (1954); *cf.* Dowling v. L. H. Shattuck, Inc., 91 N.H. 234, 17 A.2d 529 (1941).