**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter John MORIARTY, Defendant-Appellant.**

**No. 73-3524.**

United States Court of Appeals,
Fifth Circuit.

July 19, 1974.

P. D. Aiken, Miami Beach, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Don R. Boswell, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before DYER and MORGAN, Circuit Judges, and KRAFT, District Judge.

DYER, Circuit Judge:

Moriarty appeals from his jury conviction of possession of and trafficking in contraband in violation of 21 U.S.C.A. § 841(a)(1). His contentions on appeal are threefold: (1) that the hearsay testimony of the Government's rebuttal witness with respect to Moriarty's entrapment defense was both false in nature and incurably tainted by a violation of the court's order sequestrating witnesses; (2) that the court abused its discretion by denying Moriarty's motion for a continuance; and (3) that the court erred in giving the *Allen* charge upon the jury's advising that it was "hung." We affirm.

The outcome of Moriarty's trial rested principally upon the issue of entrapment *vel non*, inasmuch as the critical facts were in large measure undisputed. The evidence demonstrated that Moriarty had initially met a Government informer, Bevilacqua, in entirely fortuitous and innocent circumstances in early June 1973 when Moriarty picked up Bevilacqua while the latter was hitchhiking. From this origin, the relationship flourished due, as Moriarty sees it, to the appellant's altruistic concern for Bevilacqua's distressed circumstances. Eventually, Bevilacqua requested his philanthropic confidant to procure cocaine for a relative who would soon arrive in town. Moriarty initially demurred, but finally acquiesced in the face of Bevilacqua's repeated petitioning.

By prior arrangement, Moriarty, accompanied by a girl friend, Susan King, rendezvoused with Bevilacqua on July 10, 1973, at which time Bevilacqua introduced Moriarty to a law enforcement officer, Dietrich, who was posing as the out-of-town relative. Moriarty protested the outsider's presence, indicating that he had intended to do business with Bevilacqua alone, but soon relented to Dietrich's intrusion. The parties then got into Moriarty's car, and while driving around the neighborhood consummated the transaction with Dietrich paying over $1,700 to Moriarty in exchange for two ounces of cocaine.[1] Upon completing the deal, Dietrich placed Moriarty and King under arrest.

On the morning of trial, September 4, 1973, counsel for Moriarty and King moved for a continuance so that King could employ separate counsel and thereby obviate any possible conflict of interest on the part of counsel arising from the co-defendants' assertion of inconsistent defenses. Despite misgivings over the eleventh-hour nature of this request, the district court granted the motion

---

1. Co-defendant Susan King, the fourth member of the party, handed over a bank deposit bag containing the contraband to Dietrich at Moriarty's request and counted the money while Dietrich examined the cocaine. Proof of the extent of her involvement led the district court to grant King's motion for acquittal during the course of the defense's case.

and rescheduled the trial, with counsel's concurrence, for September 10. On September 5, Moriarty's counsel unsuccessfully moved for another continuance on the ground of the impending absence of two defense witnesses. The motion was renewed on the morning of trial but was again denied. In the course of relating the reasons warranting a continuance, counsel for Moriarty indicated that one witness had left the country on vacation, that Moriarty had known of the witness' upcoming trip but felt he could be induced to stay or else another continuance could be obtained, that counsel was fearful of inconveniencing the witness by forcing him to cancel the trip, and thus no subpoena was ever issued. No explanation was given with respect to the second witness, who was apparently in St. Louis at the time, other than that counsel was "trying" to get in touch with him. Counsel indicated that these two witnesses could corroborate Moriarty's anticipated testimony to the effect that Bevilacqua had constantly hounded him by placing numerous telephone calls to Moriarty's various quarters.

The trial proceeded as scheduled with Moriarty testifying in his own defense that, although he did illicitly transact business with Dietrich, he was entrapped by virtue of Bevilacqua's incessant demands for cocaine. In addition to the testimony of Bevilacqua and Dietrich in its case-in-chief, the Government called as a rebuttal witness Officer McDonald, who testified that on a previous occasion he had been told by an informant that Moriarty was a dealer in cocaine and that pursuant to this information, McDonald and the informant unsuccessfully sought to buy contraband from Moriarty. Moriarty objected to this line of questioning solely on grounds of hearsay, although counsel also elicited on cross-examination an admission by McDonald that he had conversed with Officer Dietrich with respect to his forthcoming testimony, even though Dietrich was fully aware that the rule of sequestration of witnesses

was in effect. This latter point of alleged error was subsequently made a basis of Moriarty's motion for a new trial, which was denied.

Upon completion of the trial, the jury retired for deliberations but soon advised the court that it was "hung." The court thereupon gave the *Allen* charge to the jury, which shortly thereafter returned a verdict of guilty.

### TESTIMONY OF OFFICER McDONALD

■ Moriarty attacks the rebuttal testimony of Officer McDonald on various grounds. Although recognizing the hearsay evidence is admissible to prove predisposition when an accused interposes the defense of entrapment, *see, e. g.,* United States v. McKinley, 5 Cir. 1974, 493 F.2d 547, 552; United States v. Simon, 5 Cir. 1973, 488 F.2d 133, 134; United States v. Stills, 5 Cir. 1973, 476 F.2d 592, 593, Moriarty protests that this hearsay evidence was proven false by McDonald's own testimony, that the testimony in any event was the poisoned fruit of flagrant violations of the sequestration rule by McDonald's conversing with Officer Dietrich, and that even if admissible, this suspect testimony was insufficient to prove Moriarty's predisposition beyond a reasonable doubt. We find none of these contentions persuasive.

■ First, the hearsay statements were in no sense proven "false" by McDonald's further testimony about events of which he had personal knowledge. The general tip that Moriarty trafficked in narcotics was simply not rendered inaccurate by Moriarty's subsequent refusal to transact business with two particular individuals on a single occasion. Indeed, McDonald testified that Moriarty, far from disclaiming any knowledge of narcotics dealing on the earlier occasion, simply excused himself from entering into any negotiations because of the presence of friends in the house, and referred McDonald and his cohort to a known cocaine dealer to supply their

needs. How Moriarty's conduct in this regard rendered erroneous the hearsay testimony with respect to the underlying tip is not easily discerned.

■ As to Moriarty's contention concerning the sequestration violation, it is imperative to note that McDonald was a last-minute witness who never received the court's sequestration admonition. In fact, McDonald's possible role in the trial appears to have been completely unknown to the prosecutors until Moriarty testified in support of his entrapment claim that Dietrich himself had previously attempted to beguile him into a narcotics transaction. The prosecutors' impromptu investigation of Moriarty's testimonial allegations revealed that Officer McDonald, not Dietrich, had made this earlier contact, and McDonald was, accordingly, brought in as a rebuttal witness. Hence, it is by no means clear that McDonald himself intentionally abridged the rule. In addition, McDonald testified that Dietrich, in discussing the case with McDonald, never indicated the substance of his own prior testimony and confined himself to McDonald's anticipated testimony.

■ Even if we were to find a violation of the rule, it nonetheless does not ineluctably follow the McDonald's testimony was inherently inadmissible, even though unobjected to by Moriarty on this basis at the time, or so patently offensive as to necessitate a new trial. Violation of the sequestration rule does not *ipso facto* bar further testimony, for as this Court has consistently held: [W]hether such a witness is to be permitted to testify is generally left to the sound discretion of the trial court. . . ." United States v. Suarez, 5 Cir. 1973, 487 F.2d 236, 238, cert. denied, 1974, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878. *Suarez* is of considerable relevance because there we sustained the district court's refusal to exclude such testimony even though important substantive statements were actually changed by the witness' post-violation testimony. Here no indication of any

kind suggests an alteration of McDonald's testimony to reflect Dietrich's purported coaching. Moreover, unlike cases relied upon by Moriarty, McDonald's rebuttal testimony, albeit helpful to the Government, was by no means crucial to the case, *compare* United States v. Nazzaro, 2 Cir. 1973, 472 F.2d 302, 312 n. 12, in the sense that no conviction would have been obtained absent McDonald's testimony. For we recently held that even where no other evidence is adduced than an informant's testimony, this alone can be sufficient to prove a defendant's predisposition to commit crime. United States v. Mitchell, 5 Cir. 1974, 493 F.2d 9, 10. Thus, the *Mitchell* rule amply rebuts Moriarty's third argument that McDonald's hearsay testimony alone cannot satisfy the Government's burden of proving predisposition, for by crediting Bevilacqua's testimony, the jury could properly find sufficient proof of predisposition.

## MOTION FOR CONTINUANCE

Moriarty also argues that the court improperly denied his second request for a continuance since his motion was grounded on the unavailability of key defense witnesses. He asserts that the court's inconvenience in granting another continuance was minimized by the brief time necessitated to try this straight-forward narcotics case and was greatly outweighed by the critical nature of the witnesses' proposed testimony. We are unconvinced.

■ It is beyond dispute that the disposition of a motion for continuance rests in the discretion of the district court and that our review is accordingly limited to determining whether an abuse of discretion infected the district court's denial. *See, e. g.*, United States v. Casey, 5 Cir. 1973, 480 F.2d 151, 152; United States v. Bolton, 5 Cir. 1971, 438 F.2d 1219, 1220; United States v. Pierce, 5 Cir. 1969, 411 F.2d 678. A variety of factors persuades us that the court's action was entirely proper. First, Moriarty failed to evince the requisite diligence

in securing the attendance of these witnesses. *See* Neufield v. United States, 1941, 73 App.D.C. 174, 118 F.2d 375, 380, cert. denied, 1942, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199. No subpoenas were ever issued to require their attendance, inasmuch as Moriarty was relying instead upon his powers of persuasion to stall their departure or alternatively upon the court's indulgence in granting a second continuance if his efforts were unsuccessful. This mere expectancy of success in producing witnesses is too weak a reed to rest on, particularly in light of the fact that the Government and the court had already been inconvenienced by the granting of the first, and similarly belated, request for a continuance. Second, even if Moriarty had displayed great diligence in bringing about the witnesses' attendance, their anticipated testimony was purely corroborative in nature, in that each would testify, according to Moriarty, that Bevilacqua had undertaken prodigious efforts to contact Moriarty on various occasions. Importantly, Moriarty himself testified to this effect, and his testimony was not substantially contradicted by any of the Government's witnesses. The value of this testimony thus seems marginal at best. Third, Moriarty was unable to indicate precisely when either witness would be available, since his counsel had simply been "trying" to obtain the St. Louis-based witness, and since the exact date of the other witness' return from an overseas vacation was unknown. Fourth, Moriarty expressly agreed to the rescheduled trial date and assured the court that his witnesses would be available for whatever time the court chose to reset the trial. Under these circumstances, there was no abuse of discretion in denying the continuance request.

## ALLEN CHARGE

██ Finally, Moriarty requests this court to reconsider its recent reaffirmation of the *Allen* charge under the circumstances of this case. *See* United States v. Bailey, 5 Cir. 1973, 480 F.2d 518. *Bailey* has settled the *Allen* charge issue in this Circuit, and Moriarty's attempted resurrection of the matter by asking us to reverse this Court's *en banc* decision is meritless.

Affirmed.