Edward ELLIS, Plaintiff-Appellant,

v.

Walter T. CAPPS, Warden, Atmore
State Prison, Defendant-Appellee.

No. 73–3958.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1974.

**226**

Melvin W. Brunson, Mobile, Ala. (Court-appointed), for plaintiff-appellant.

George W. Royer, Jr., William M. Bowen, Jr., Asst. Attys. Gen., Montgomery, Ala., Robert G. Kendall, Mobile, Ala., for defendant-appellee.

Before BROWN, Chief Judge, and RIVES and DYER, Circuit Judges.

DYER, Circuit Judge:

Edward Ellis, an Alabama state prisoner, brought a civil action against Walter Capps, Warden of the Atmore State Prison, for unconstitutionally relegating him to punitive isolation and for allegedly presiding over and directing a beating of Ellis following a disciplinary hearing. The case was tried before a jury, although the trial judge gave to the jury only the issues arising from the alleged assault and the court determined all issues with respect to Ellis' solitary confinement. The jury returned a verdict for the defendant, from which Ellis appeals. He urges two errors as requiring reversal: (1) the introduction into evidence of his prison disciplinary record, and (2) the denial of his motion for a continuance which was prompted by the absence of a prisoner-witness. We affirm.

During the defendant's case and in the course of the direct examination of Warden Capps, the trial court admitted into evidence over Ellis' objection various official documents comprising Ellis' prison records. The exhibits related to a number of misdeeds perpetrated by Ellis while confined in state penal institutions, and clearly placed Ellis in an unfavorable light as a person of extremely violent and belligerent propensities. On appeal, Ellis freely confesses that his record is one of obstinance, misbehavior and violence and therefore seeks reversal of the result below on the basis of the prejudicial impact of those records. Ellis contends not that the prejudicial effects outweighed the evidence's probative value, but rather argues that his misbehavior behind prison walls was irrelevant to the issue before the jury, namely whether he was in fact assaulted at the behest of Warden Capps. We are convinced that Ellis' view of relevancy is unduly circumscribed, in that the records were admissible to show his bias and prejudice against the warden as head of the institution to which Ellis was so ill-adjusted.[1]

First, it is highly significant that many of the acts of violence committed by Ellis and reflected in his prison record were brought out both on direct examination and on cross-examination of Ellis without objection. The various exhibits simply documented notorious incidents of violence and referred to other instances of less egregious misconduct, such as slothfulness, malingering, and "missing the back gate." But virtually all of the various incidents which demonstrated Ellis' violent disposition were previously brought before the jury in the testimony of Ellis himself.[2] Any possibly "shocking" or

---

1. These records were compiled in the regular course of business and therefore fall within the official records exception to the hearsay rule. *See* United States v. Newman, 5 Cir. 1972, 468 F.2d 791, 795, cert. denied, 1973, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194; Tomlin v. Beto, 5 Cir. 1967, 377 F.2d 276.

2. Indeed, on direct examination, Ellis admitted in responding to his own counsel's questions that he had been charged previously with refusing to obey a direct order, and with cursing an officer. These events were also described in the prison records of which Ellis now complains.

"notorious" accounts of Ellis' propensities toward violence and mayhem were unveiled long before introduction of the documentary evidence. It is therefore difficult to understand in what conceivable manner Ellis was prejudiced when his consistent pattern of outrageous misconduct was revealed by his own damaging admissions. This in itself is sufficient to refute Ellis' assignment of error in this regard.

But even if Ellis' record had appeared initially by means of this documentary evidence, rather than testimonially and without objection at an earlier stage in the trial, admissibility would nonetheless exist. The gravamen of Ellis' complaint was, of course, injuries suffered in a fracas allegedly directed by the head of the penal institution. In pursuing his claim, Ellis personally testified to alleged brutalities engineered by the warden against him. Resolution of this factual issue created by Ellis' own testimony opened wide the door for his adversary to demonstrate Ellis' bias or prejudice so as to taint his credibility. And the documentary evidence tended directly to show Ellis' intransigent and belligerent opposition to the prison, its rules and its employees. Ellis' interaction with prison officials was literally saturated with disobedience, threats, and acts of violence against both persons and property. This explosive hatred of prison life and officialdom, as evidenced by the events described in the exhibits, was directly relevant to the issue of Ellis' credibility in testifying against the principal symbol of the institutions he so outspokenly and aggressively despised. In short, the evidence showed that Ellis was completely at war with the system and its functionaries and that he was willing and anxious to wreak violence upon any and all representatives of the system, from guards to medical officers to wardens. This

deep-seated antipathy toward the system and its officers could hardly be more relevant in assessing Ellis' credibility in charging the head of the prison with directing a tortious assault against him.[3] Therefore, by his own testimony, Ellis put his credibility into issue, relevant to which was a searching inquiry into his prolific troubles with the prison system, upon whose head he sought to impose civil liability.

 To hold otherwise would raise serious due process problems, since a defendant must be afforded reasonable opportunity to refute grave allegations brought against him in a civil suit. Cordoning off a highly relevant area of inquiry such as the bias and prejudice of a complainant is repugnant to the principle of a fair trial. The permissible leeway for a defendant's stratagems is broad indeed. This Court has succinctly stated the rule applicable in this case as follows:

> Evidence to show bias or interest of a witness in a cause covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is indefinite. The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only. Facts wholly immaterial, or prejudicial to one of the parties on the main issue, may be material as affecting the credibility of a witness. Thurber Corporation v. Fairchild Motor Corporation, 5 Cir., 1959, 269 F.2d 841; Central Truck Lines, Inc., v. Lott, 5 Cir., 1957, 249 F.2d 722; Majestic v. Louisville & N. R. Co., 6 Cir., 1945, 147 F.2d 621; and 3 Wigmore, Evidence, Sec. 949.

Aetna Insurance Company v. Paddock, 5 Cir. 1962, 301 F.2d 807, 812.

---

3. The fact that many of these records pertained to incidents not directly involving Capps himself does not detract from their relevancy to the issue of bias. The recorded incidents abundantly demonstrate Ellis' total alienation from all aspects of prison life.

This deep-seated aversion to the prison and its employees is directly relevant in a suit brought against the very person who heads the institution and who is the superior of the many functionaries with whom Ellis was so intransigently embattled.

■■ Turning now to the court's denial of Ellis' motion for a continuance we find no error. Since such determinations are entrusted to the sound discretion of the trial court, *see, e. g.,* United States v. Moriarty, 5 Cir. 1974, 497 F.2d 486, we decline to overturn the trial court absent a showing of an abuse of discretion. No such showing was made here, particularly since Ellis' version of the events in question, to which the absentee witness would have addressed himself, were sufficiently seconded by the testimony of several of Ellis' fellow prisoners. There was no error in denying the continuance.

The judgment is therefore

Affirmed.

RIVES, Circuit Judge (dissenting):

I respectfully dissent because I am convinced that trying together the jury and nonjury issues and letting the jury hear and see Ellis' institutional history was erroneous and prejudicial. In the brief filed on behalf of Capps, it is stated:

> "It is admitted that the prison record of the plaintiff was introduced for the purpose of showing that the confinement of the plaintiff in punitive isolation and the conditions of his confinement did not violate his right to be free from cruel and unusual punishment. However it is quite another matter to allege that this evidence had no relevancy or relationship to the issue of the assault and battery." [1]

The institutional record was admitted for its relevance on the nonjury issues. Its relevance on the jury issues was extremely slight. It did not tend to prove or disprove that Capps directed a beating of Ellis.

The majority finds "that the records were admissible to show his bias and prejudice against the warden as head of the institution to which Ellis was so ill-adjusted." Of the twenty-nine exhibits taken from Ellis' institutional record, only Exhibit 32 relates to any direct interaction between Ellis and Capps. Others suggest bias against Capps only insofar as they indicate Ellis' attitude toward various corrections officers and his extreme dissatisfaction with his situation at the prison where Capps was warden. Still others suggest possible bias against Capps only to the extent that misconduct in another Alabama prison could be construed as a basis for bias against Capps.[2]

The evidence was of minimal value for the purpose of affecting Ellis' credibility. It was not needed for that purpose. The jury knew that Ellis was a felon, that he was currently a prisoner, and that he was attempting to recover damages from Capps; these circumstances reflect on Ellis' credibility to such an extent that the exhibits were at best cumulative on that issue.

The evidence was highly prejudicial. The exhibits tended to show that Ellis was a violent and dangerous troublemaker. A request that Ellis be transferred from Draper Prison indicated that Ellis

> "has been a constant problem since coming to this institution. He has refused to work, missed the back gate on numbereous [sic] occassions [sic], and at one time, missed his school assignment for a period of 4 weeks. He has had a number [sic] fights with other inmates and is always causing some kind of trouble. Request this inmate be transferred to Atmore Maximum [sic] for the betterment of this institution." (Exh. 6.)

A statement by a corrections officer showed that during a visit to Ellis in punitive isolation, Ellis was "cursing and ask [sic] me to feel of the knot on his head, when I refused he spit on me three (3) times and continued cursing me and dared me to open the door" (Exh. 18.) A memorandum by a medical assistant related that Ellis became "insubordinate" during sick call, and

---

1. Appellee's Brief, pp. 7–8.

2. Exhibits 6–14 relate to occurrences at Draper

cursed the assistant in forceful terms (Exh. 20). Other documents also refer to cursing at officers and the use of the "vilest of profane language" (Exhs. 22, 25, 27 and 28). A report by a corrections officer stated that Ellis injured another prisoner by throwing glass into his cell and that threats of "mace" and tear gas were necessary to induce Ellis to give up an unauthorized knife (Exh. 21). Another report concerning a later incident said that Ellis was a member of a small group of prisoners who "refused to come out of their cells and continued their abusive and profane language, vandalizing [of commodes and wash basins], and threatening the officers with bodily harm." On this occasion "mace" was used, and Ellis was "relieved of a knife strapped to his mid-section" (Exh. 27). A statement by one officer indicated that Ellis participated in holding him hostage, threatened to kill him, and actually struck him in the stomach and in the face (Exh. 30). Another report stated that Ellis had threatened to kill Capps and another officer (Exh. 32).

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or of confusing or misleading the jury. Since its obvious purpose is to help assure a fair trial, this rule is applicable both in criminal cases and in civil actions.[3] The twenty-nine contested exhibits in the present case contained such shocking accounts of Ellis' prison conduct that the jury could hardly have avoided the feeling that Ellis should not succeed in his lawsuit, even if Capps and others had assaulted him. Also, the emphasis placed upon these exhibits and the extraordinary conduct detailed in the various reports and statements may well have misled or confused the jury about the issues in the case. No matter his past conduct or character, Ellis was entitled to a fair trial on the issue of whether Capps ordered or otherwise participated in the alleged beating. Taking into consideration the limited relevance of these exhibits to the issue before the jury, and the extremely prejudicial nature of these exhibits, I cannot escape the conclusion that the wholesale admission into evidence of the items from Ellis' institutional history was reversible error.

---

3. As to criminal cases, see Shepard v. United States, 1933, 290 U.S. 96, 104, 54 S.Ct. 22, 78 L.Ed. 196; United States v. Bell, 5 Cir. 1972, 457 F.2d 1231, 1237; United States v. Ravich, 2 Cir. 1970, 421 F.2d 1196, 1204–1205; People v. Cavanaugh, 1955, 44 Cal.2d 252, 282 P.2d 53; Kiefer v. State, 1958, 239 Ind. 103, 153 N.E.2d 899; Wigmore, Evidence (3rd ed.) §§ 194, 1864, 1904; 4 Wigmore, Evidence (Chadbourn rev. 1972) § 1157; Wright, Fed.Prac. & Proc.: Criminal § 402 at p. 65 (1969), and cases cited therein.

As to civil actions, see Smith v. Spina, 3 Cir. 1973, 477 F.2d 1140, 1146; Shepard v. General Motors Corp., 1 Cir. 1970, 423 F.2d 406, 408; Ryan v. United Parcel Service, 2 Cir. 1953, 205 F.2d 362, 364; Burch v. Reading Company, E.D.Pa.1956, 140 F.Supp. 136, 147; Howser v. Pearson, D.D.C.1951, 95 F.Supp. 936, 941; Harper v. Bolton, 1962, 239 S.C. 541, 544, 124 S.E.2d 54, 55; Louisville & Nashville RR v. Pearson, 1892, 97 Ala. 211, 219, 12 So. 176, 180; Wigmore, Evidence (3d ed.) § 1864, esp. at 491 (also see §§ 199, 208, 1904); 4 Wigmore, Evidence (Chadbourn rev. 1972) § 1158; Wright & Miller, Fed.Prac. & Proc.: Civil § 2403 at p. 315 (1971).

See also Rule 403 of the proposed Federal Rules of Evidence; Rule 45 of the Uniform Rules of Evidence drafted by the National Conference of Commissioners on Uniform State Laws.