CATHERINE E. CLEARY, ADMINISTRATRIX, ETC., OF JOHN J. CLEARY, DECEASED, PLAINTIFF-APPELLEE, v. CITY OF CAMDEN ET AL., DEFENDANTS; SOUTH JERSEY PORT DISTRICT, TRADING AS CAMDEN MARINE TERMINALS, DEFENDANT-APPELLANT.

Submitted October 30, 1936—Decided May 11, 1937.

216

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the appellant, *T. Harry Rowland* and *D. Trueman Stackhouse.*

For the appellee, *Walter S. Keown* and *George D. Rothermel.*

The opinion of the court was delivered by

PERSKIE, J.   South Jersey Port District, trading as Camden Marine Terminals, one of the three originally named defendants below, appeals from a judgment entered upon a jury verdict in the Camden County Court of Common Pleas (to which court this cause was referred from the Camden County Circuit Court by order of Mr. Justice Lloyd) in the sum of $30,000 as administratrix *ad prosequendum,* and in the further sum of $1,000 as general administratrix of her husband's estate.

On a rule to show cause why the verdict should not be set aside, and a new trial granted, three grounds were set down. They were (1) that the verdict was contrary to the weight of the evidence, (2) that the verdict was excessive, and (3) that the verdict was the result of sympathy, passion or prejudice on the part of the jury.   The rule contained the express proviso that exceptions taken by defendant at the trial, including the court's refusal to nonsuit and to direct a verdict, be reserved.   The only ground argued, on the return of the rule, was that the verdict was excessive.   The court concluded that the verdict was excessive and accordingly reduced it to $18,000.   As so reduced it was accepted by the plaintiff.   The disposition of the rule on the sole point (excessive verdict) is not, as is urged, *res judicata* of the other two points.   While the latter points were assigned, they were not only not argued but were specifically reserved.   Thus they were, in effect, exscinded from the grounds assigned in the rule.

As indicated, there were two other defendants. They were Louis, Thomas, Frank and John Bantivoglio, co-partners and trading as N. Bantivoglio & Sons, and the city of Camden.

It appears that plaintiff's intestate was a longshoreman and was employed by the Luckenbach Steamship Company, Incorporated. A ship of the latter was docked at the foot of Beckett street, Camden, N. J., where the defendant operated the pier, for the purpose of taking on freight. The freight consisted of bales of pressed cardboard or fiber board, each being about "four feet ten inches long and about three feet ten inches wide and about nine inches thick," or "five feet by two and one-half feet by nine inches," and each weighing between two hundred and twenty-five and two hundred and fifty pounds. It is sufficient presently to observe that these bales were stacked in piles on the floor of the pier, one on top of the other (about six or eight in number), and each pile consisted of about eight or nine of such rows. There was a passageway (the width of which is sharply in dispute, varying from three to six inches and from four to six feet) between each pile.

On December 18th, 1931, plaintiff's husband and three co-employes were engaged in placing bales from one of these piles upon a truck which in turn was conveyed by a tractor to the ship. As plaintiff's intestate bent down to help place the last bale of the pile which was then being placed upon the truck, as aforesaid, bales (varying in number between three to thirty-five) of an immediate adjoining pile (some six or eight feet high) fell down upon him, crushed him, and as a result of the injuries thus sustained he died on January 10th, 1932.

At the end of plaintiff's proof each defendant made a motion for a nonsuit. The motion so made in behalf of N. Bantivoglio & Sons was granted on the ground of lack of proof of actionable negligence on their part. The motion so made in behalf of the city of Camden was denied. Later the city offered proof tending to indicate that it had no interest in either the management or operation of the pier. The court, upon ascertaining that no further proof would be offered

against the city entertained, before the end of the case, with the consent of counsel for all parties, a motion made for the city for a directed verdict in its favor, and granted same. Defendant's motion to nonsuit, based on three grounds, (1) that it was engaged in the exercise of a governmental function, (2) that there was no proof of any negligence on its part and (3) that plaintiff was guilty of contributory negligence, was denied. The denial was rested on the ground that the doctrine of *res ipsa loquitur* applied. At the conclusion of the entire case defendant's motion for a directed verdict was denied because the court was still of the opinion that the proofs showed that defendant had some connection with the piling of the bales involved in the accident, and, therefore, concluded to and did submit the issue to the jury for its determination. The verdict of the jury has already been stated. It is the judgment based on that verdict, as reduced, that is here challenged.

Defendant sets down ninety-three grounds of appeal. Grounds 1 to 6, inclusive, and grounds 8 to 76, inclusive, relating to the alleged erroneous rulings upon the admission or rejection of evidence, are not argued, and are concededly abandoned. Grounds 78, 84, 85, 86, 87, 88, 89 and 92, relating to exceptions to the court's charge, are also not argued and they, too, are admittedly abandoned. The remaining and principal grounds of this appeal relate to the court's refusal to nonsuit and to direct a verdict, and alleged errors in the court's charge.

Generally stated, the common complaint underlying practically all of the grounds argued is that the court erroneously invoked and applied the doctrine of *res ipsa loquitur*.

More specifically stated, defendant's complaint, as we understand it, is that the court erroneously submitted the cause to the jury upon two irreconcilable theories. First, upon the theory of the existence of actionable negligence. This we will treat in our disposition of the factual situation presented at the time of motions to nonsuit and to direct a verdict. Second, upon the theory of *res ipsa loquitur* which presupposes the absence of direct proof of actionable negligence.

We rather apprehend that this complaint misconceives both the effect of the proofs as submitted and the circumstances which called for the invocation and application of the doctrine of *res ipsa loquitur.*

It is well settled law that, as a general rule, proof of the occurrence of an accident does not raise the presumption of negligence (*Bahr* v. *Lombard, Ayers & Co.* (*Court of Errors and Appeals*), 53 *N. J. L.* 233; 21 *Atl. Rep.* 190), and that plaintiff must carry the burden of proving negligence as charged, for negligence is not presumed. *McCombe* v. *Public Service Railway Co.* (*Court of Errors and Appeals*), 95 *N. J. L.* 187, 189; 112 *Atl. Rep.* 255.

Of course, where all the facts and circumstances under which an accident occurs are disclosed by the proofs, and the question is whether, under the proofs as submitted, the conduct of the defendant is negligent, there is nothing left to inference, and the doctrine of *res ipsa loquitur* has no application. *Hochreutaner* v. *Pfenninger,* 113 *N. J. L.* 317; 174 *Atl. Rep.* 513. Just as this stated principle of law sets forth the circumstances when the stated doctrine is not applicable just so is there an equally well established principle of law that sets forth the circumstances when the same doctrine is applicable. It is stated thus: "Where the thing [which caused the accident] is under the management of the defendant, or his servant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of care." 1 *Thomp. Negl.,* § 15; *Smith* v. *Kirby* (*Court of Errors and Appeals*), 115 *N. J. L.* 225; 178 *Atl. Rep.* 739; Cf. also, *Mumma* v. *Easton and Amboy Railroad Co.,* 73 *N. J. L.* 653; 65 *Atl. Rep.* 208; *Mannon* v. *Odd Fellows, &c.,* 97 *N. J. L.* 215; 116 *Atl. Rep.* 784.

In tort liability, a falling object is the common circumstance calling for the invocation and application of the doctrine of *res ipsa loquitur. Byrne* v. *Boadle,* 2 *H. & C.* 722 (falling barrel); *Sheridan* v. *Foley* (*Supreme Court*), 58

*N. J. L.* 230; 33 *Atl. Rep.* 484 (falling brick) ; *DeVicenzo* v. *Sommer Faucet Co. (Court of Errors and Appeals),* 87 *N. J. L.* 646; 94 *Atl. Rep.* 573 (falling shed) ; *Higgins* v. *Goerke Kirsch Co. (Supreme Court),* 91 *N. J. L.* 468; 103 *Atl. Rep.* 371; *affirmed,* 92 *N. J. L.* 424; 106 *Atl. Rep.* 394 (falling lid of ice box) ; *Law* v. *Morris (Court of Errors and Appeals),* 102 *N. J. L.* 650; 133 *Atl. Rep.* 427 (falling plaster) ; *Barbero* v. *Pellegrino (Court of Errors and Appeals),* 108 *N. J. L.* 156; 156 *Atl. Rep.* 765 (falling brick) ; *Crawford* v. *American Stores Co. (Supreme Court),* 5 *N. J. Mis. R.* 413; 136 *Atl Rep.* 715 (falling cans) ; *Sudol* v. *Gurtman (Supreme Court),* 5 *N. J. Mis. R.* 929; 138 *All. Rep.* 705; *affirmed,* 104 *N. J. L.* 668; 141 *Atl. Rep.* 922 (falling pipe) ; *Gordon* v. *Weinreb (Supreme Court),* 13 *N. J. Mis. R.* 835; 181 *Atl. Rep.* 435 (falling package) ; *Titone* v. *Economy Bootery, Inc. (Supreme Court),* 14 *N. J. Mis. R.* 349; 184 *Atl. Rep.* 809 (falling electric light bulb).

The facts in the case at bar are strikingly similar to those in the case of *Crawford* v. *American Stores Co., supra.* In that case cans of pickles were piled nearly three feet high in pyramid fashion on the counter of defendant's grocery store; they tumbled over and one or more of them struck the plaintiff. The Supreme Court (Kalisch, Katzenbach and Lloyd) held that the doctrine of *res ipsa loquitur* applied, and said: "It is difficult to see a distinction in principle between a pile of cans falling over from a counter and a brick falling from the scaffold of a building. *Sheridan* v. *Foley,* 58 *N. J. L.* 230." Whether the doctrine of *res ipsa loquitur* as applied in the Crawford case, and as applied in some of the other cases, evinces a growing extension of the field of its applicability to tort liability is not for us to say. We, too, recognize no distinction, in principle, between a pile of bales tumbling over from a given spot on the floor of the pier and a pile of cans falling over from a counter in a grocery store.

Assuming, but not so deciding, that there was some proof of negligence (slight slanting of the floor and of the bales) does that proof necessarily foreclose the application of the doctrine of *res ipsa loquitur?* We think not. Our Court of

Errors and Appeals in the case of *Mannon* v. *Odd Fellows, &c., supra,* held that the inference of negligence, under the proofs submitted, was permissible under the doctrine of *res ipsa loquitur,* and then proceeded to point out (at *p.* 217) that there was other evidence which "plainly made it a jury question whether due care had been exercised in the management of the machine, and if not exercised, whether the accident resulted from that lack of care." Again the same court, in *Gilroy* v. *Standard Oil Co.,* 107 *N. J. L.* 170; 151 *Atl. Rep.* 598, held that while the judgment could have been sustained on the doctrine of *res ipsa loquitur,* yet it also pointed out (at *p.* 174) "that there was other sufficient evidence from which the jury could infer negligence." "And this evidence was sufficient to justify the court in submitting the case to the jury." Again, in *Smith* v. *Kirby, supra,* the same court affirmed the judgment on the doctrine of *res ipsa loquitur* but also pointed out (at *p.* 227) that, "there was, however, other evidence bearing upon the negligence of defendant's servants." That evidence is recited, and the court concluded that, "the testimony while contradictory in some of its phases, presented questions for the determination of the jury and the judge properly denied the motions for nonsuit and direction."

The holding in the aforementioned cases merely illustrates that in addition to the permissible inferences of negligence, want of due care, that may be drawn from the facts and circumstances connected with the happening of the accident itself, upon the doctrine of *res ipsa loquitur,* the injured party may also show such other relevant facts and circumstances to the end of determining whether due care had been exercised in the sole management and control of the thing which caused the accident, and if not so exercised whether the accident resulted from lack of care. In such circumstances, apparently the trial judge is doubly fortified in his submission of the case to the jury.

We now shall consider so many of the points argued as, in our opinion, merit consideration.

*First: Ground No. 7. Failure to grant motion to nonsuit.* In addition to that which has already been written, it was

open to the jury to find, at the end of plaintiff's proofs, that N. Bantivoglio & Sons, by their servants, delivered the bales, by truck on the pier; that defendant's servants designated the spot on the pier where the bales were to be placed; that Bantivoglio's servants dropped the bales from the truck on the place so designated; that when the bales dropped reached about the level of the bales on the truck Bantivoglio's servants helped push them over from the truck to the pile of bales on the floor of the pier; that, while defendant denied the accuracy of the wording on their bills rendered to Luckenbach Steamship Company, Incorporated, for that service, yet, these bills unquestionably included a charge for the storage and piling of the bales, and as so billed were paid by the steamship company; that neither deceased nor any of his co-employes or any of the other employes of Luckenbach Steamship Company, Incorporated, touched the pile of bales from which the falling bales injured and killed plaintiff's intestate; that there was some proof that the floor of the pier slanted slightly towards the river front and that the bales slanted from a given point in the pile, yet there was no direct proof of faulty construction of the floor of the pier, or of any negligent piling of the bales; that the slanting of the bales was not noticed until about ten or fifteen minutes prior to the accident; and only noticed by some of deceased's co-employes; that while the floor of the pier was practically filled with like bales nothing happened to them, i. e., they did not slant or fall. Thus, at this posture of the proofs, it was clearly open to the jury to find that defendant assumed, for a consideration paid to it, the sole control and management of the piling and of the caring of the bales; that the falling of the bales from the pile was an extraordinary happening, one which in the ordinary course of things does not happen if defendant, under the circumstances, had used proper care, and thus afforded, in the absence of an explanation by defendant, a reasonable inference that the accident arose from want of care. We are of the opinion that the accident, under the circumstances exhibited, was one which typically and correctly invoked the doctrine of *res ipsa loquitur*. Defendant cannot

be heard to complain that the court erroneously, as it is urged, granted the nonsuit as to N. Bantivoglio & Sons. The claim that the latter exercised partial control in the piling of the bales finds no real support in the proof. They merely dropped the bales where they were told to drop them by the defendant's servants who thereafter assumed sole control thereof. But even if it were otherwise, that would not relieve defendant from its liability, if any, in the premises. *Fort* v. *Reid Ice Cream Co.*, 98 *N. J. L.* 559; 119 *Atl. Rep.* 638; *Smith* v. *Neon Lights, Inc.*, 110 *N. J. L.* 326; 164 *Atl. Rep.* 423. Nor did the granting of the nonsuit place an added obligation on defendant. The latter was only obliged to explain its own connection, and not that of N. Bantivoglio & Sons, with the accident. A *prima facie* case was presented. The nonsuit was properly denied.

*Second: Ground No. 77. Failure to direct a verdict.* Defendant went forward with its explanatory proof. Without detailing that proof, it is sufficient to observe that it denied negligence, denied that it had sole control or management of the bales in question; in fact, its proof tended to establish that it had turned over the piles of bales about nine o'clock of the morning of the accident and that thereafter the Luckenbach Steamship Company, Incorporated, had exclusive control of the piles of bales until the hour of the accident which was about five o'clock in the afternoon of the same day. All of which proof was denied by plaintiff.

In the borrowed words of Mr. Justice Parker, in the case of *Mannon* v. *Odd Fellows, &c., supra* (at *p.* 217), we are satisfied that here too "there was no question in the case of plaintiff having held back any material evidence at his command, as in *Bahr* v. *Lombard, Ayres & Co.*, 53 *Id.* 233, or *Levendusky* v. *Empire Rubber Co.*, 84 *Id.* 698. Nor was there, as a court question, adequate counter-proof, as in *McCormack* v. *Standard Oil Co.*, 60 *Id.* 243."

We are satisfied, as already stated, that the plaintiff made out a *prima facie* case which justified the refusal of the defendant's motion to nonsuit, and that the proofs at the end of the entire case still remained for the jury to say whether

such *prima facie* case was met by the evidence for the defendant, the burden of proof, of course, remaining throughout on the plaintiff. *Hughes* v. *Atlantic City, &c., Railroad Co.,* 85 *N. J. L.* 212; 89 *Atl. Rep.* 769; *Niebel* v. *Winslow,* 88 *N. J. L.* 191; 95 *Atl. Rep.* 995; *Fanshawe* v. *Rawlins,* 89 *N. J. L.* 344; 98 *Atl. Rep.* 439; *Mannon* v. *Odd Fellows, &c., supra.*

*Third: As to the charge of the court.* To pick out a sentence of the court's charge, or a part of a sentence, or a paragraph of the charge, without regard to the charge of the court as a whole, to make interpolations in the charge, to complain because the court charged as complaining party requested, is not the proper method of determining whether the court committed reversible error. The orderly and proper procedure is to study the charge of the court, with due regard to the issues and proofs, in its entirety as delivered. Does the charge as so delivered fairly and accurately state the law applicable? "Would ordinary men and jurors understand the instruction as a whole?" *Kargman* v. *Carlo,* 85 *N. J. L.* 632, 638; 90 *Atl. Rep.* 292, 295; *Lyon* v. *Fabricant,* 113 *N. J. L.* 62, 67; 172 *Atl. Rep.* 567. Or was the jury misled to the injury of the appellant? *Poling* v. *Melee,* 115 *N. J. L.* 191, 193; 178 *Atl. Rep.* 737.

(A.) *Ground 79.* It is said that the court's charge was erroneous and misleading. The portion complained of is as follows:

"(a) The court, in part charged the jury as follows: 'The plaintiff charges that the pile of bales fell on the decedent, John J. Cleary, because the bales were improperly and negligently piled by an employe or servant of the defendant company, South Jersey Port District, and the floor of the pier was not level, which aided or assisted the pile of bales to fall over, causing the injuries complained of.

" 'This suit, you will see, therefore, is based on negligence, and negligence has been defined in the law of this state to be the failure to do that which a reasonably prudent person should do under the circumstances with which he is confronted, or the doing of some act that a reasonably prudent person should not do under the circumstances with which he may be con-

fronted. It is the failure to observe for the protection of another person that degree of care, precaution and vigilance, which the circumstances justly demand, whereby such person suffers injury or death. The doing of an act or the failure to do an act may be performed on the part of a corporation, which acts through its servants or agents. I suggest to you therefore, that your first question for consideration is whether or not the defendant company, South Jersey Port District, was negligent in any manner within the definition of negligence that I have given to you on the day in question and at the pier of the South Jersey Port District, as testified to you by the witnesses.' "

(b) The court then charged the jury at the request of the defendant-appellant, as follows:

"There being in the opinion of the court at the close of the plaintiff's case no direct evidence of negligence on the part of the South Jersey Port Authority, South Jersey Port Commission or the Camden Marine Terminal, but inasmuch as the happening of the accident in the manner described, in the opinion of the court, called for an explanation thereof by the said defendants, the case is submitted to you under what the law knows as the doctrine of *res ipsa loquitur."*

Neither subdivision is entirely correct. Under subdivision (a) appellant omits the last sentence of that portion of the charge which was as follows: "If you find that there was no negligence on the part of the defendant company, by its servants or agents, at said time and place, then of course that would end the case and there should be a verdict of no cause of action on both claims of the plaintiff."

Then subdivision (b) is interpolated, at this point of the charge, with this introduction: "The court *then* charged the jury at the request of the defendant-appellant as follows: * * *" As a matter of fact this is defendant's request to charge. It was not charged by the court until after the court had completed its entire charge and had covered plaintiff's request to charge. Defendant now argues notwithstanding that it asked the court to so charge the latter should not have done so. This is, to say the least, a most unusual argument; it is clearly without merit.

(B) *Ground 80.* It is further said that the court erroneously charged as follows:

"Now, gentlemen of the jury, the evidence adduced by the plaintiff at the close of her case was such that a *prima facie* presumption of negligence could be drawn, and the burden was then cast upon the defendant company of going forward with its evidence to explain the accident which occurred to the deceased and brought about his death, consistent with the exercise of due care on the defendant's part. In other words, upon the plaintiff showing a *prima facie* case, the burden of going forward with its proof was upon the defendant, to satisfy you that the accident to John J. Cleary, which subsequently brought about his death, was not the result of want of care on its, defendant's part."

Appellant stops without stating that which immediately followed the quoted portion of the court's charge. It is thus: "This does not, however, relieve the plaintiff of the burden of proof. Gentlemen of the jury, you will keep in mind and I charge you that the burden of proof is upon the plaintiff to satisfy you by the greater weight of the believeable testimony of the truth of the allegations as to the negligence of the defendant company and that such negligence was the proximate cause of the injury of which she complains. * * *"

This charge did not as in *Hughes* v. *Atlantic City, &c., Railroad Co., supra,* impose upon defendant a duty of persuasion upon the whole case; that is a duty which the law imposes upon the plaintiff.

(C) *Ground 81.* It is further said that the court's charge was erroneous and misleading. It is as follows:

"Upon the plaintiff showing a *prima facie* case, the burden of going forward with its proof was upon the defendant, to satisfy you that the accident to John J. Cleary, which subsequently brought about his death, was not the result of want of care on its, defendant's part.

"* * * The most that is required from the said defendants is explanation, not exculpation, and that explanation may leave the mind in equipoise, in which case the said defendants are entitled to a verdict because the plaintiff has

failed to prove her case by the weight of the evidence, and therefore if, upon the consideration of the whole case, you find that the proof on each side is equally balanced, the plaintiff has thereby failed to prove her case by the weight of the evidence, and your verdict should be for the said defendants."

Here again as pointed out in ground 80 the first paragraph is not complete (compare added portion quoted under ground 80), and the second part complained of is defendant's own request to charge number 6.

(D) *Ground 82.* It is said that the court erroneously charged as follows: "Now, gentlemen of the jury, the evidence adduced by the plaintiff at the close of her case was such that a *prima facie* presumption of negligence could be drawn, * * *." This again is not complete. The complete paragraph and that which followed it is set forth under ground 80. The court did, however, use the expression "that a *prima facie* presumption of negligence could be drawn." Similar expressions on the subject have crept into some of the decisions. *Tompkins* v. *Burlington Island Amusement Co.,* 102 *N. J. L.* 411, 412; 132 *Atl. Rep.* 670; *Glicken* v. *Bergman,* 117 *N. J. L.* 306; 187 *Atl. Rep.* 535. But in each instance, as in the case at bar, the court attached no broader significance to that statement than if it had correctly said in the first instance that, under such circumstance, an inference of negligence is permissible but is not a necessary one (*McPherson* v. *Hudson, &c., Railway Co.,* 101 *N. J. L.* 410; 128 *Atl. Rep.* 231), and that the meaning of the maxim is that the occurrence itself, in the absence of an explanation by the defendant, affords a *prima facie* evidence that there was want of care. *Mumma* v. *Easton and Amboy Railroad Co., supra; Feingold* v. *Kresge,* 116 *N. J. L.* 146, 147; 183 *Atl. Rep.* 170. The court did not say that the jury must draw an inference of negligence but that such an inference, in effect, could be drawn. It was merely permissive and not mandatory.

We have examined all other grounds argued and find them to be without merit.

We think that the court's charge was comprehensive, fair and accurate; it is free from prejudicial error.

The judgment is affirmed, with costs.