**John William SMITH, Appellant,**

v.

**Dominick SPINA, Individually and as Director of the Police Department of the City of Newark, N. J., et al.**

**No. 72-1402.**

United States Court of Appeals, Third Circuit.

Argued March 1, 1973.

Decided April 24, 1973.

**1142**

Morton Stavis, Irvin L. Solondz, Newark, N. J., for appellant.

William G. Scott, Donald L. Berlin, Lieb, Teich & Berlin, East Orange, N. J., for appellees.

Before MARIS and ALDISERT, Circuit Judges, and GORBEY, District Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question presented is whether appellant was prejudiced by error during the course of the trial of an action brought by him under the Civil Rights Act, 42 U.S.C. § 1983, against certain police officers and the City of Newark, "for a brutal assault and battery inflicted upon him by the Newark police officers DeSimone and Pontrelli, without cause, justification, or provocation." We have concluded that there was no reversible trial error as to the appellant and will affirm the judgment of the district court.

Appellant, a black man, was driving a taxicab in the City of Newark on the evening of July 12, 1967, when he was stopped by police officers DeSimone and Pontrelli for an alleged traffic offense. Following a verbal exchange, the policemen took appellant into custody and brought him to the precinct house. While in custody he sustained injuries. It was the plaintiff's contention that these injuries were caused by an assault and battery committed upon him by the police. The police contended that appellant violently resisted arrest, had to be carried from the police car to the precinct house, and that "while being carried, plaintiff kicked and wiggled and thrashed about so violently that the officers carrying him were caused to fall," and that, in turn, the plaintiff also fell and that the injuries received were due to the fall on the steps of the station house.

■■ Before treating appellant's assignments of error, we address the jurisdictional posture of this appeal. Although federal jurisdiction was based on the general federal question statute, 28 U.S.C. § 1331, and the civil rights jurisdictional statute, 28 U.S.C. § 1343, and although the remedy exclusively relied on by appellant was the Civil Rights Act, 42 U.S.C. § 1983, appellant tried the case as a civil tort action. Indeed, at oral argument on appeal, in response to

specific questions from the court, appellant's counsel asserted that the theories of negligence, res ipsa loquitur, and intentional assault and battery, which form the major bases of this appeal, were properly brought as an integral part of the § 1983 remedy. It is, of course, fundamental that the Civil Rights Act permits recovery for only "deprivations of any rights, privileges, or immunities secured by the [federal] Constitution and [federal] laws." We have recently said: "It becomes important to delineate that conduct which is actionable in state courts as a tort, and that which is actionable in federal courts under § 1983. The two rights of action do not always stand *in pari materia*. Some common law and statutory torts, although actionable in a state forum, do not rise to constitutional dimensions. The converse is equally true. Conduct may be actionable as a deprivation of constitutional rights where no force and violence has been utilized, and there exists no orthodox counterpart of state common law or statutory relief available." Howell v. Cataldi, 464 F.2d 272, 278 (3d Cir. 1972).

Thus, we have previously held "that a tort committed by a state official acting under color of state law is [not], in and of itself, sufficient to show an invasion of a person's right under the Act [§ 1983]." Kent v. Prasse, 385 F.2d 406, 407 (3d Cir. 1967). Similarly, an averment of improper medical treatment was held insufficient to state a cause of action under the Civil Rights Act, Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970); Fear v. Commonwealth of Pennsylvania, 413 F.2d 88 (3d Cir.), cert. denied, 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234 (1969); as was an averment of inferior medical treatment facilities for treatment of an ear infection, Kontos v. Prasse, 444 F.2d 166 (3d Cir. 1971); as was an averment of being forced to work in prison on a press which was dangerous and unfit and which had previously been condemned, Kent v. Prasse, *supra,* 385 F.2d at 407;

as was an averment of professional malpractice against an attorney, Fletcher v. Hook, 446 F.2d 14, 16 (3d Cir. 1971).

We have no hesitancy in concluding, therefore, that appellant's counsel proceeded under fundamental misapprehensions that § 1983 subsumed these state tort causes of action. Had the case been presented to the jury in this light by the trial judge, there would be no necessity to discuss the points raised on this appeal; we would have simply dismissed the appeal for want of federal jurisdiction of the tort claims, there being no averment of diversity between the parties, and there being no actual diversity of citizenship. Without the benefit of a proper pleading in the complaint, however, the trial court treated the tort claim as an independent state claim appended to the claim based on federal law under § 1983. The trial court obviously exercised discretion under instructions contained in United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), that if the state and federal claims derive from a common nucleus of operative fact, and if they "are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole."

■■ That there is *power* to hear a pendent state claim does not mean that its assumption is automatic or that the federal courts should be hospitable to such claims without proper pleadings. It is hornbook law that the jurisdiction of the federal court must appear in the plaintiff's statement of his claim. Joy v. City of St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776 (1906). "It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case. . . . He must allege in his pleadings the facts essential to show jurisdiction." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 189, 56 S.Ct. 780, 782, 785, 80 L.Ed. 1135 (1936). See also, F.R.Civ.P. 8(a)(1).

Procedural requirements aside, dictates of fundamental fairness require that a defendant have the opportunity to interpose any objection to the annexation of a pendent state claim to a federal question claim. In the case at bar, the defendants did not object to the unpleaded theory of the plaintiff, the reception of evidence thereunder, and the court's charge to the jury. Having received a favorable verdict, defendants do not press this point, and properly so, for they now have the advantage of res judicata on the state claims.

■ Our analysis of jurisdiction, although not invited by the parties, is a critical prerequisite to a consideration of appellant's contentions, for this threshold determination directs us to the appropriate substantive law in considering claims of negligence, assault and battery, and res ipsa loquitur. Here again, appellant's counsel was in basic error when he advised the court, at oral argument, that federal substantive law, and not state law, would govern these claims. See Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[1]

■ Additionally, we observe that appellant did not object to the § 1983 charge given by the trial court, and does not press any specific points on this aspect of the charge. The defendants also made no objection and, therefore, the issue is not before us. We are constrained to observe, nevertheless, that the § 1983 charge would not have withstood an objection by the defendants. Indeed, had an adverse verdict been returned against the defendants, we are

persuaded that the charge would not have withstood a contention of plain error. Quoting the Fourteenth Amendment, the court told the jury that it was the theory of the plaintiff that "these men, acting under the color of the State law, wrongfully deprived him of his Constitutional Rights by exceeding their authority in using excessive force in taking him into custody." At no time did the court define "excessive force" in terms of a constitutional deprivation or a violation of a right protected by federal law. The court also referred to "unlawful acts" of the policemen and essentially charged that if the jury found that the policemen defendants committed "unlawful acts," they would be liable. Here, too, the court did not describe "unlawful acts" in the context of the Civil Rights Act, but stated simply that "the unlawful acts must be of such a nature or character and be permitted under such circumstances that they would not have occurred but for the fact that the person committing them was an official exercising his official powers outside the bounds of lawful authority." Such a jury instruction was overbroad, all-encompassing, and did not relate with specificity to any deprivation under the federal constitution or federal laws. Thus, under these instructions, the jury could have found the defendants liable under § 1983 if they found that the police officers committed some "unlawful" act under the civil or criminal laws of the state. Recovery under § 1983 is strictly limited to deprivations under the federal constitution and *federal* law.[2] But, as we have heretofore observed, this error militated against the defend-

1. Properly styled, appellant's § 1983 claim would track two theories: (1) A Fourteenth Amendment deprivation in that without due process of law the police punished him for his alleged traffic violation by administering a physical beating upon him instead of submitting him to trial by jury to determine his guilt or innocence and, if guilty, to be exposed to fine or imprisonment as provided by law. See United States v. Delerme, 457 F.2d 156, 161 (3d Cir. 1972). (2) An Eighth

Amendment deprivation in that the police inflicted cruel and unusual punishment.

2. "Although, as originally drafted in 1871, § 1983's predecessor protected rights, privileges, or immunities secured by the Constitution, the provision included by the Congress in the Revised Statutes of 1874 was enlarged to provide protection for rights, privileges, or immunities secured by federal law as well." Mitchum v. Foster, 407 U.S. 225, 240 n. 30, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705 (1972).

ants only, and, being the winner of the verdict, they do not complain.

■ Still another pleading error of which appellant was the beneficiary was the inclusion of the City of Newark as a defendant in the § 1983 action. Even though Newark consented to this defendant status, a district court does not have subject matter jurisdiction under § 1983 to entertain a claim against a municipality. In Monroe v. Pape, 365 U.S. 167, 187, 191, 81 S.Ct. 473, 484, 486, 5 L.Ed.2d 492 (1961), the Court observed "that Congress did not undertake to bring municipal corporations within the ambit of § 1979. . . . The response of the Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by the Act of April 20, 1871, was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include them." See also United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3d Cir. 1969).

■■ That no objection was lodged by Newark at trial is immaterial. "[T]he District Court is vested with authority to inquire at any time whether these [jurisdictional] conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor." McNutt v. General Motors Acceptance Corp., *supra*, 298 U.S. at 189, 56 S.Ct. at 789. Nor does an agreement to submit to jurisdiction control, for just as it is well settled that the issue of subject matter jurisdiction is always open, so too is it settled that subject matter jurisdiction cannot be supplied by consent of the parties. See, *e. g.*, Knee v. Chemical Leaman Tank Lines, Inc., 293 F. Supp. 1094, 1095 (E.D.Pa.1968). There is some authority, however, suggesting that the fact that the municipality could not have been a defendant under § 1983 would not preclude it from being a proper defendant under the pendent state claim, so long as the other factors conferring pendent jurisdiction under the *Gibbs* test are present. See Astor-Honor, Inc. v. Grossett & Dunlop, Inc., 441 F.2d 627 (2d Cir. 1971).[3] Here, the court properly charged: "You will recall I stated to you that this case was brought on two grounds. First, against the officers for a violation of his Civil Rights, the second against the City of Newark and the Police Officers, those named and unnamed under the theory of negligence."

■ Appellant urges several assignments of trial error, most of which relate to the state claims of negligence and intentional tort and, hence, will be governed by state law. Others relate to the reception of evidence, and will be governed by the broad provisions of F.R. Civ.P. 43.[4]

■ Appellant contends that the court erred in excluding evidence that other Newark police officers from the Fourth Precinct were guilty of brutal police conduct shortly after the arrest of appellant. This was relevant only on the issue of the liability of the chief of po-

3. See also Moor v. County of Alameda, 458 F.2d 1217 (9th Cir.), cert. granted, 409 U.S. 841, 93 S.Ct. 66, 34 L.Ed.2d 80 (1972), where the issue argued before the Supreme Court was whether a federal court has power to exercise jurisdiction over a party on a pendent state claim when the party is not involved in the related federal claim.

4. Rule 43(a) reads:
 In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

lice, and at least as to the state claim, to the issue of the city's respondeat superior liability. The basis of the theory is that Chief Spina knew or should have known of the propensity of his subordinate officers to abuse blacks and, therefore, was negligent in not promulgating prophylactic regulations to prevent this. The relevancy of this evidence at best is highly suspect. After defendant Spina testified, he was dismissed as a party defendant upon motion of the appellant. With Spina out of the case, the relevancy is virtually nonexistent. And even if relevant, factors leading to admissibility could be offset by remoteness, undue prejudice, or confusion of the issues. The matter was within the discretion of the trial judge and we find that he did not abuse his discretion when he refused to admit the evidence. "When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." Shepard v. United States, 290 U.S. 96, 10 1, 54 S.Ct. 22, 26, 78 L.Ed. 196 (1933). See also Rule 403, Proposed Rules of Evidence for the United States Courts and Magistrates.

■ Next, appellant argues that the trial court erred in permitting the introduction of evidence of written police reports of appellant's arrest. The records were introduced after the authors of the reports had testified but before their cross-examination. The court admitted the reports on the theory that they were business records. Rule 803, Proposed Rules of Evidence, *supra*, provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness.

. . .

(8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law, or (C) in civil cases and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The Federal Public Records Act, 28 U.S.C. § 1733, by its terms is not applicable to non-federal public agencies. Thus, resort must be made to the common law business record exception to the hearsay rule. Kay v. United States, 255 F.2d 476 (4th Cir. 1958). As stated in the Advisory Committee's note to Section 803: "Public records are a recognized hearsay exception at common law and have been the subject of statutes without number. McCormick, § 291. . . . Justification for the exception is the assumption that a public officer will perform his duty properly and the unlikelihood that he will remember details independently of the record. Wong Wing Foo v. McGrath, 196 F.2d 120 (9th Cir. 1952)." Accordingly, under federal practice, it was not error to admit the police record.

■ Appellant further assigns as error the refusal to apply the law of res ipsa loquitur to the testimony adduced at trial. It is the theory of the appellant, "that he had been in perfectly good health before he was taken into police custody, that he had been badly beaten while in such custody, and that the police testimony did not provide reasonable explanation of the cause or causes of all of plaintiff's multiple injuries." Consideration of this charge is limited to the pendent state claim and, therefore, would be controlled by the substantive law of New Jersey. Erie v. Tompkins, *supra*. Defendants argue that under New Jersey law for the res ipsa doctrine to apply, there must be indications that the injury could not have resulted from plaintiff's own conduct. Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 139 A.2d 404 (1958). Because defendants claimed that it was the plaintiff's violent kicking and thrashing which caused his fall on the steps of the station house, we are persuaded, therefore,

that the doctrine would not apply. Moreover, in Cleary v. Camden, 118 N. J.L. 215, 192 A. 29, 32, affirmed, 119 N.J.L. 387, 196 A. 455 (1937), the court declared:

> Of course, where all the facts and circumstances under which an accident occurs are disclosed by the proofs, and the question is whether, under the proofs as submitted, the conduct of the defendant is negligent, there is nothing left to inference, and the doctrine of *res ipsa loquitur* has no application.

See also Kahalili v. Rosecliff Realty, 26 N.J. 595, 141 A.2d 301 (1958).

▉▉▉▉ The trial court charged the jury that the City of Newark could not be held liable for an intentional tort of its agents or servants. As we have heretofore observed, the liability of the city was properly an issue only on the pendent state claims and not under the § 1983 action; accordingly, New Jersey law will apply. It is apparent that this instruction contravened the rationale of McAndrew v. Mularchuk, 38 N.J. 156, 183 A.2d 74 (1962). It would appear under the doctrine of respondeat superior the City of Newark would be held liable for the actions of Officers DeSimone and Pontrelli, even if intentional. We have concluded, however, that this was harmless error. The finding of the jury exonerated DeSimone and Pontrelli of liability under any theory. Because the City of Newark could have been liable only on a theory of respondeat superior, the liability of its servant was a necessary prerequisite to the liability of the master.

▉▉▉▉ Finally, appellant argues: "The lower court erred in permitting testimony as to the plaintiff's prior conviction in the state court—a conviction since set aside by this court—particularly when the pendency of the appeal to this court was called to the attention of the trial judge." Prior to the reception of this evidence appellant made a timely motion to exclude evidence that he had been convicted of a state charge of assault and battery upon one of the policemen defendants arising out of this same occurrence. He argued then, as he does now, that although this conviction was affirmed by the New Jersey appellate courts, State v. Smith, 102 N.J.Super. 325, 246 A.2d 35 (1968); 55 N.J. 476, 262 A.2d 868, cert. denied, 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970), he subsequently filed a petition for a writ of habeas corpus in the federal district court, which, although denied by the district court, was the subject of an appeal in this court at that time. The trial court rejected his contention. As a matter of trial strategy, appellant put his own criminal record in evidence. Later, this court reversed the judgment of the federal habeas court and ordered that a writ issue on the basis of an improper jury selection. Smith v. Yeager, 465 F. 2d 272 (3d Cir. 1972).

We find no merit in appellant's contention. Although this court has ordered that a writ of habeas corpus issue, such action is not the equivalent of a reversal of a state conviction. Only the Supreme Court has power, on direct appeal, to reverse a state judgment of conviction. Federal habeas corpus jurisdiction is based on detention simpliciter. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The jurisprudential effect of the granting of a federal writ is to release relator from custody. It does not have the force and effect of voiding a conviction. Moreover, at the time the evidence was introduced at trial, no court had granted the writ of habeas corpus.

Buttressing our conclusion is the philosophy of proposed Rule 609(c), *supra*, stating that evidence of a conviction is not admissible under this rule if ". . . the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on innocence." Since the action of this court in reversing the denial of the writ was not based on the appellant's innocence, it is extremely doubtful that even if the writ had been granted at the time of the trial

whether the evidence of the conviction would have been excluded on the specific theory posed by appellant.

 Moreover, it appears to be the general rule that it is permissible to attack the credibility of a witness by showing a previous criminal conviction even though an appeal therefrom or a motion for a new trial is pending. United States v. Owens, 271 F.2d 425 (2d Cir. 1959), cert. denied, 365 U.S. 874, 81 S.Ct. 910, 5 L.Ed.2d 863 (1961); Bloch v. United States, 226 F.2d 185 (9th Cir. 1955), cert. denied, 350 U.S. 948, 76 S.Ct. 323, 100 L.Ed. 826 (1956).

We have carefully considered the other contentions of the appellant and find them to be without merit.

The judgment of the district court will be affirmed.