NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 19-1959

DAVID GOLDRICH,
                                    Appellant

v.

CITY OF JERSEY CITY;
STEVEN FULOP, In his individual and official capacities;
ROBERT J. KAKOLESKI, In his individual and official capacities;
JAMES SHEA, In his individual and official capacities;
PHILIP ZACCHE, In his individual and official capacities;
JOSEPH CONNORS, In his individual and official capacities

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-15-cv-00885)
District Judge: Honorable Susan D. Wigenton

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2020

Before: AMBRO, MATEY, and ROTH, Circuit Judges

(Opinion filed: February 25, 2020)

—————————

## OPINION[*]

—————————

AMBRO, <u>Circuit Judge</u>,

Appellant David Goldrich—a police lieutenant for the City of Jersey City, New Jersey—brought this lawsuit against the City and several of its officials, alleging that he suffered retaliation after reporting the mishandling of public funds. The suit went to trial against the City and one City official, James Shea, on Goldrich's retaliation claim under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §§ 34:19-1–14. After the parties rested, the District Court directed a verdict for the City, leaving only the claim against Shea. The jury then returned a verdict in his favor.

On appeal, Goldrich contends that the District Court erred in directing a verdict for the City, arguing that the jury could have found the City liable under a theory of *respondeat superior* (that a principal is responsible for the acts of its agents). While we agree, any error is harmless in light of the subsequent jury verdict exculpating Shea. Hence we affirm.

## I.     Factual and Procedural Background

Except where noted, the following facts are undisputed by the parties. Goldrich blew the whistle on Jersey City's "Off-Duty Program," under which private businesses could contract with the City to retain police officers to serve as security guards while off

———————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

duty. The City ordinance that established the program required these businesses to prepay the City and mandated that the prepaid funds be kept in a trust fund for paying the officers.

Goldrich was assigned by the City's then-police chief, Robert Cowan, to serve as a coordinator for certain supervising officers who participated in the program. In this capacity, Goldrich learned that the City's Business Administrator had been transferring funds from the program's trust fund into another City account and believed that this could be illegal. He and another City employee brought this to the attention of the City's Public Safety Director, Shea.

Less than a month after his meeting with Shea, Goldrich was reassigned from his position as program coordinator to duty as a desk lieutenant. While the reassignment order was issued by the new police chief, Phillip Zacche (who had replaced Cowan), Goldrich maintains, and it was his position at trial, that Zacche issued the order because Shea had eliminated the coordinator position Goldrich had held. For their part, Shea and the City maintain, and Shea testified at trial, that the coordinator position held by Goldrich had never been authorized, and Shea simply brought this to Zacche's attention when he learned that Goldrich was holding it. Shea also testified that, when Cowan was still the police chief, Shea told Cowan and representatives of the supervising officers' union he would not authorize the program coordinator position Goldrich was performing, as Shea believed it was not an efficient use of a supervising officer as opposed to a part-time civilian.

3

Goldrich brought suit, alleging that his reassignment was in retaliation for outing the purported illegal fund transfers. He named, among other defendants, the City, Shea, and Zacche. In addition to claims under 42 U.S.C. § 1983 and New Jersey's Civil Rights Act, neither of which is at issue in this appeal, Goldrich asserted a retaliation claim under CEPA. The District Court granted summary judgment in favor of Zacche on the CEPA claim, concluding that there was no evidence "to suggest that any of the Defendants, other than Shea, were aware of [Goldrich]'s complaints about the off-duty account," and thus could not have retaliated against Goldrich. J.A. 63. Following summary judgment, all that remained for trial was the CEPA claim against Shea and the City.

After the parties rested at trial, the District Court directed a verdict for the City, noting that "the claims . . . essentially relate to [Goldrich's] . . . complain[t] to . . . Shea," and "there's no allegation that can be sustained . . . that the [C]ity did something improper or wrong." J.A. 1134:24–1135:6. Following closing arguments, the jury deliberated and returned a verdict for Shea. According to the jury's answers on the verdict sheet to the District Court's interrogatories, Goldrich had proven that he reasonably believed that City funds were being mishandled and complained about this to Shea, but had failed to prove that "Shea took adverse employment action against [him.]" J.A. 153–54.

Following the verdict, Goldrich moved for a new trial, arguing that the District Court had erred in directing a verdict for the City. Goldrich explained that CEPA allows a municipality to be held liable under a theory of *respondeat superior*, and thus the jury could have found the City liable for the conduct of both Shea and Zacche. The District

4

Court denied the motion.  Goldrich appeals, arguing that it erred in directing a verdict for the City and denying his new trial motion.

## II.    Discussion[1]

"Our review of the district court's granting of a directed verdict is plenary; we engage in the same inquiry as the district court in deciding the motion." *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991).  "A directed verdict is appropriate only where the evidence, when viewed in a light most favorable to the party opposing the motion, is insufficient for a reasonable jury to find in favor of the opposing party." *Id.*  "We review the district court's order ruling on a motion for a new trial for abuse of discretion unless the court's denial is based on the application of a legal precept, in which case the standard of review is plenary." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993).

CEPA prohibits an "employer" from "tak[ing] any retaliatory action against an employee" for informing a supervisor of what the employee reasonably believes to be a violation of law.  N.J. Stat. Ann. § 34:19-3(a)(1).  CEPA defines "employer" to include "municipalities" as well as any "person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." *Id.* § 34:19-2(a).  The New Jersey Supreme Court has held that where a municipal employee, acting within the scope of his employment, violates CEPA, the municipality may be held liable

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C. § 1291.

5

under a theory of *respondeat superior*. *See Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 964 (N.J. 1994).

The District Court did not address the possibility of *respondeat superior* liability when it directed a verdict for the City. It merely relied on the absence of any evidence that the City itself "did something improper or wrong." J.A. 1135:6. We come out differently, as the City could have been found liable for the acts of Shea under a theory of *respondeat superior*. But that error was harmless given the subsequent jury verdict for Shea, who was the only-remaining individual defendant.

"[A] non-constitutional legal error [is] harmless if it is highly probable that the error did not affect the judgment." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 329 (3d Cir. 2001). While "we must be well-satisfied that the error did not prejudice a party, . . . we need not disprove every reasonable possibility of prejudice." *Id.*

Here, for the City to be liable under a theory of *respondeat superior*, its employee must have retaliated against Goldrich for reporting the alleged mishandling of funds. At summary judgment, the District Court concluded that Zacche could not have retaliated against Goldrich, as there was no evidence that he knew about Goldrich's report. Goldrich does not challenge this conclusion here. Then, at trial, the jury found that Shea did not retaliate against Goldrich, as Shea did not take an adverse employment action against him. Goldrich does not contend that there was sufficient evidence that any other City employee retaliated against him, such that the City can be held liable per *respondeat superior*. Because the District Court's summary judgment for Zacche and the jury's verdict for Shea together indicate that Goldrich did not suffer retaliation, the City cannot

6

be liable under that theory, and thus the error in directing a verdict for the City was harmless.  *Cf. Smith v. Spina*, 477 F.2d 1140, 1147 (3d Cir. 1973) (holding a district court erred in instructing a jury that, under New Jersey law, a city could not be liable under a *respondeat superior* theory, yet that error was harmless because the jury subsequently "exonerated" the individual city employees).

Goldrich contends that the error here was not harmless because, while the jury found that Shea did not *himself* take an adverse employment action against Goldrich, it could have found that Shea directed Zacche to do so.  On that basis, Goldrich maintains, the jury could have found the City liable as their employer.  But if the jury had found that Shea directed Zacche to take an adverse employment action against Goldrich, then it could have found that Shea *himself* took adverse employment action against Goldrich such that he was liable for retaliation under CEPA.  *See Battaglia v. United Parcel Service, Inc.*, 70 A.3d 602, 627 (N.J. 2013) ("[P]roof that a supervisor who did not have the authority to subject the complaining employee to a retaliatory employment action[,] but who prepared a biased evaluation because of the employee's CEPA-protected complaints[,] might have sufficiently tainted the view of the actual decision maker to support relief."); *Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 552 (N.J. 2000) (holding that where a person takes an adverse employment action against the plaintiff based on a negative report from a second person with a retaliatory motive, the jury can infer that the plaintiff suffered retaliation under CEPA).  By its verdict for Shea, the jury indicated that

7

it did not find that Shea directed Zacche to take an adverse employment action against Goldrich.[2]

Against this conclusion, Goldrich argues that the language of the third interrogatory posed to the jury is "critical" because it asked the jury whether "Shea *took* adverse employment action against [Goldrich,]" not whether "Shea *caused* adverse action" against him, or whether "[Goldrich] merely *suffered* adverse action." Goldrich Br. 27 (emphases in original). But Goldrich did not object to the wording of the interrogatory, and he disclaims here any argument that the interrogatory was flawed.

And even if the interrogatory standing alone could have confused the jury on whether it could find Shea liable for directing Zacche to take an adverse employment action, the District Court's jury instructions on the elements of a CEPA claim—to which Goldrich also does not claim to have objected and does not challenge here—provided sufficient clarification. In addition to instructing the jury that "[r]etaliatory action can be a discharge, suspension, demotion or any other adverse employment action . . . in the terms and conditions of employment," and "can include many separate but relatively minor instances of adverse action," J.A. 1182:21–1183:1, the Court instructed that "the ultimate issue [it] must decide" is whether "Shea transfer[red] [Goldrich] *or order[ed] him to be transferred*," J.A. 1183:11–13 (emphasis added).

_____

[2] Goldrich contends it is undisputed that Shea directed Zacche to take an adverse employment action against him because Shea eliminated the coordinator position Goldrich held. But, as noted above, Shea testified that the position was never authorized and that he merely brought this to Zacche's attention. The jury could have reasonably believed this testimony and concluded that Shea did not direct Zacche to take any adverse employment action.

8

\*　　\*　　\*　　\*　　\*

In sum, we are satisfied that the District Court's directing of a verdict for the City despite the possibility of *respondeat superior* liability was harmless given the subsequent jury verdict for Shea.  Thus we affirm.